Brian G. Selden (State Bar No. 261828)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:    (650) 739-3939
Facsimile:    (650) 739-3900
bgselden@jonesday.com

John D. Goetz*
Tarah E. Ackerman*
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone:    (412)391-3939
Facsimile:    (412) 394-7959
jdgoetz@jonesday.com
tackerman@jonesday.com

*applying for admission pro hac vice

Attorneys for Plaintiff
HAINAN AIRLINES, CO. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HAINAN AIRLINES, CO. LTD., | Case No. 5:16-cv-05143 |
| Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT, WANTON AND RECKLESS MISCONDUCT, AND NEGLIGENCE** |
| v. | |
| AVIATION PORT SERVICES, LLC, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff Hainan Airlines, Co. Ltd. ("HNA" or "Plaintiff") seeks monetary damages from Defendant Aviation Port Services, LLC (hereinafter, "APS" or "Defendant") for damages to Aircraft B2750, a Boeing 787 owned by HNA directly caused by the reckless acts and omissions of an APS employee at San Jose International Airport on September 21, 2015 (hereinafter the "Incident").

As alleged more fully below, the Incident was caused by the reckless misconduct and

COMPLAINT

omissions of an APS employee during the course and scope of his employment with APS. Despite numerous good-faith attempts by HNA to obtain reimbursement for its reasonable damages directly caused by the Incident, APS has refused to so reimburse, in violation of the 2008 Standard Ground Handling Agreement between HNA and APS ("SGHA"). HNA seeks all damages that it directly and reasonably incurred as a result of the Incident in an amount not less than USD 465,526.60, and such additional relief that this Court deems appropriate, as follows:

**Parties**

1. Plaintiff HNA is a Chinese limited company organized under the laws of the Peoples Republic of China with its principal place of business in Haikou, Hainan, Peoples Republic of China. HNA is a privately owned airline that operates scheduled domestic and international service to more than 90 cities, including service to the San Jose International Airport.

2. Defendant APS is a limited liability company organized under the laws of the State of California, with its principal place of business defined in the SGHA as 5814 Graham Ave., Ste. 205, Sumner, WA 98390.

**Jurisdiction and Venue**

3. This Court has personal jurisdiction over APS because APS is a California limited liability company and conducts business in the State of California.

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, and there is complete diversity between the parties. Plaintiff HNA is a citizen of a foreign state, the Peoples Republic of China, and Defendant APS is a California limited liability company with, upon information and belief, all of its members being residents of various states of the United States of America.

5. This Court has jurisdiction over the subject matter of this action under Paragraph 9 of Annex B to the SGHA between the parties, which permits dispute resolution by way of litigation should "all reasonable efforts to resolve disputes amongst" the parties fail. HNA has repeatedly attempted in good faith, at several different times, to resolve this dispute with APS by

1 email, telephone, and by formal written letter and communications. All of these attempts have
2 failed. APS has refused, and refuses, to compensate HNA for the damages it has incurred.

3   6.   Venue is proper in this District under 28 U.S.C. § 1391(b), as a substantial part of
4 the events or omissions giving rise to the claim occurred in this District.

### The Incident

6   7.   On September 21, 2015, B2750, a Boeing 787 owned by HNA, landed at San Jose
7 International Airport and taxied to Gate 18.

8   8.   After arriving at the Gate, APS, pursuant to its duties under the SGHA, began to
9 service the aircraft.

10   9.   As APS readied the aircraft for its next departure, an APS employee asked another
11 APS employee, Logan Gordon, to *carry* passengers' strollers down the ramp from the passenger
12 bridge to the cargo area of the aircraft.

13   10.   Mr. Gordon decided not to follow the instructions he was given. Rather, Mr.
14 Gordon, acting in the scope of his employment with APS, recklessly chose to use the electric
15 bridge elevator to lower the strollers to the ground.

16   11.   Mr. Gordon made this decision even though (1) his coworker had specifically told
17 him moments earlier to carry the strollers to the cargo area, and (2) APS's established practices
18 and policies *prohibit* the use of the bridge elevator when wide bodied aircraft such as a Boeing
19 787 are at the Gate, because the close proximity of the elevator to the aircraft creates a high risk
20 that the elevator will impact and cause damage to the aircraft.

21   12.   Mr. Gordon was *trained* by APS not to use the bridge elevator when aircraft were
22 parked at a Gate, because the close proximity of the elevator to the aircraft creates a high risk that
23 the elevator will impact and cause damage to the aircraft.

24   13.   The proximity of the bridge elevator to wide bodied aircraft such as HNA's B2750
25 is even more dangerously close at Gate 18 of San Jose International Airport than it is at other
26 gates. APS and Mr. Gordon were both aware of this fact before the Incident.

27   14.   After the strollers were unloaded from the bridge elevator, Mr. Gordon pushed the
28 button to raise the elevator back to bridge level.

1  15. At no time did Mr. Gordon check to see if the gate to the bridge elevator was ajar
2  prior to raising the elevator. In fact, it was open.

3  16. Rather than watch and monitor the elevator as it rose, Mr. Gordon walked away to
4  complete other tasks. Mr. Gordon was distracted, too busy, or trying to multitask.

5  17. As the bridge elevator rose, the open gate to the elevator swung open. The left
6  engine cowling of B2750 was now in the direct path of open gate to the bridge elevator as it rose.

7  18. The open elevator gate struck and severely damaged the left engine cowling of
8  B2750 as pictured below:



25  19. Because Mr. Gordon walked away from the bridge elevator after activating it, and
26  did not watch the elevator as it rose, he did not see that the gate to the elevator had swung open.

27  20. Mr. Gordon also did not see that the open elevator gate would strike the engine
28  cowling of B2750. Another APS employee yelled to Mr. Gordon to tell him of the impact.

1    21.    Had Mr. Gordon simply followed (1) the instructions of his co-worker, (2) APS's
2  policies and procedures, or (3) his training, and carried the strollers to the cargo area of the
3  aircraft, the damage to B2750 would not have occurred.
4    22.    Further, had Mr. Gordon remained at the controls of the bridge elevator after
5  activating them, he would have seen the gate swing open, and could have prevented the impact
6  and resulting damage.
7    23.    As a direct result of Mr. Gordon's recklessness, the engine cowling of B2750
8  sustained serious damage that required it to be removed for significant repairs, forcing HNA to
9  rent a replacement cowling during the repair process.
10    24.    If not repaired with reasonable expediency, the damage to the cowling could have
11  increased.  Further, the presence of a dent in the cowling left B2750 more vulnerable to foreign
12  object damage during flight, creating a potential for damage to the aircraft's engine.  Accordingly,
13  HNA could fly the damaged aircraft for a time, but full replacement of the damaged areas was
14  necessary before B2750's next scheduled maintenance.  To not repair the cowling before the next
15  scheduled maintenance threatened B2750's airworthiness and the safety of HNA's passengers and
16  crew.  It would also have violated HNA's operating requirements.
17    25.    The engine cowling for a Boeing 787 aircraft is a gigantic, rare part.  The Boeing
18  787 is a relatively new model aircraft, and repair off-wing was required.  HNA contracted with
19  Goodrich, the only manufacturer of the Boeing 787 engine cowling, to obtain a temporary
20  replacement cowling in the closest location possible, Singapore.  Goodrich also was contracted to
21  repair the damage to the engine cowling of B2750 which was directly caused by the recklessness
22  of APS employee Logan Gordon.

### Damages

24    26.    HNA sustained the following damages to B2750 which were directly caused by
25  the reckless conduct of APS employee Logan Gordon:

|   | DESCRIPTION | COST (USD) |
|---|---|---|
| 1 | Non-Destructive Testing Inspection Fee | 1500 |

COMPLAINT

| 2 | Airport support working fee | 442.72 |
|---|---|---|
| 3 | Damaged Cowling Removal Fee | 2635 |
| 4 | Transport fee (to maintenance) | 610.4 |
| 5 | Maintenance fee | 21256.56 |
| 6 | Total cowling rental fee | 436413.02 |
| 7 | Cowling replacement fee | 2058.5 |
| 8 | Transport fee (to maintenance) | 610.4 |
|  | **TOTAL DAMAGES** | 465,526.60 |

### The SGHA

27. The parties entered into the SGHA, a services contract entitled "IATA Standard Ground Handling Agreement 2008," effective 15 June 2015.

28. The SGHA remains in effect, and APS still services HNA aircraft for compensation. HNA is APS's customer for ground handling services.

29. The SGHA contractually establishes APS as HNA's ground services provider at San Jose International Airport.

30. The SGHA sets forth contractual obligations and requirements owed by APS to HNA, in addition to the common law duty of care owed to HNA by APS and its employees.

31. Article 5.1 of the SGHA, "Standard of Work" requires that APS "carry out all technical and flight operations services as well as other services also having a safety aspect, for example, load control, loading of aircraft, . . . in accordance with the [HNA's] instructions. . . . In the case of absence of instructions by [HNA], [APS] shall follow its own standard practices and procedures . . .."

32. HNA did not provide APS with instructions allowing use of the bridge elevator at San Jose International Airport. Accordingly, APS was obligated to follow its own standard practices and procedures.

33. APS employee Logan Gordon failed to follow APS'Sstandard practices and procedures and his own training in using the bridge elevator to lower strollers from the bridge, rather than simply walking them down to the cargo area as he was instructed to do.

34. Article 8.1 of the SGHA allows recovery of all damages resulting from acts or omissions of APS's employees when "done . . . recklessly and with knowledge that damage, . . . or loss would probably result."

35. APS employee Logan Gordon acted recklessly and with knowledge that damage to B2750 would probably result, as evidenced by his disregard for the instructions he was given, APS's practices and procedures, his training, and by his decision to walk away to attend to other tasks rather than watch the bridge elevator that he activated rise to bridge level in close proximity to B2750.

36. Article 8.5 of the SGHA requires that APS indemnify HNA "against any physical loss of or damage to [HNA's] Aircraft caused by [APS's] negligent act or omission PROVIDED ALWAYS THAT [APS's] liability shall be limited to such loss of or damage to the [HNA] Aircraft in an amount not exceeding the level of deductible under [HNA's] Hull All Risk Policy . . .."

37. HNA's damages are all the result of loss of or damage to B2750 caused by APS employee Logan Gordon's reckless acts and omissions as detailed above.

38. The SGHA allows full recovery of the damages that HNA incurred and is seeking. The damages sought are not "indirect" or "consequential" in nature and, in any event, the SGHA contains no mention of these terms in reference to damages that HNA may seek from APS.

39. HNA's damages of USD 465,526.60 are entirely within, and do not exceed, the level of deductible under its Hull All Risk Policy.

## Count I

### Breach of Contract

40. HNA re-alleges and incorporates the allegations set forth in Paragraphs 1 through 39 herein.

41. APS breached Article 5.1 the SGHA as a direct result of its employee's failure to follow instructions, APS standard practices and procedures, and his training in using a bridge elevator to lower strollers from the bridge, rather than carrying them down to the cargo area.

42. APS's breach of Article 5.1 caused substantial damage HNA's aircraft, B2750, requiring HNA to incur monetary damages, as set forth above, in an amount not less than $465,526.60.

43. Under Articles 8.1 and 8.5 of the SGHA, HNA is entitled to recover for the full amount of the monetary damages it incurred and were directly caused by APS's breach.

## Count II

### Wanton and Reckless Misconduct

44. HNA re-alleges and incorporates the allegations set forth in Paragraphs 1 through 43 herein.

45. APS employee Logan Gordon's actions and omissions outlined were consciously performed and were so unreasonable and dangerous in nature that he knew or should have known that it was highly probable that harm would result, constituting Wanton and Reckless Misconduct under California law.

46. Because Mr. Gordon's reckless acts and omissions which damaged B2750 were committed in the scope and course of his employment with APS, APS is liable for Mr. Gordon's reckless misconduct.

47. As a result of Mr. Gordon's recklessness, HNA has incurred damages in an amount not less than USD 465,526.60.

## Count III

### Negligence

48. HNA re-alleges and incorporates the allegations set forth in Paragraphs 1 through 47 herein.

49. APS and its employee Logan Gordon had a contractual and common law duty to HNA to exercise due and reasonable care in performing the tasks with which they were charged in servicing HNA's aircraft, including B2750, at San Jose International Airport.

50. APS and its employee Logan Gordon breached that duty by using and misusing the bridge elevator while B2750, a wide-bodied Boeing 787, was parked at Gate 18 at San Jose International Airport.

51. APS and its employee Logan Gordon further breached that duty by failing to watch the bridge elevator, which was positioned in close proximity to B2750, raise after Mr. Gordon activated it.

52. As a result of these breaches, the bridge elevator struck and substantially damaged the left engine cowling of B2750.

53. APS's breaches constitute negligence under California law.

54. Mr. Gordon's negligent acts and omissions which damaged B2750 were committed in the scope of his employment with APS.  APS is liable for Mr. Gordon's negligent misconduct.

55. As a result of the foregoing, HNA has sustained damages in an amount not less than USD 465,526.60.

**Prayer For Relief**

WHEREFORE, HNA prays that:

1. Judgment be entered for HNA on its claims;

2. APS be required to pay HNA compensatory damages in an amount not less than USD 465,526.60;

3. APS be required to pay HNA's , costs, attorney's fee; and

4. HNA recover such other relief as the Court may deem appropriate.

**Demand For Jury Trial**

Plaintiff demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

| | | |
|---|---|---|
| 1 | Dated: September 7, 2016 | JONES DAY |
| 2 | | By: /s/ Brian G. Selden |
| 4 | | Brian G. Selden (State Bar No. 261828)<br>1755 Embarcadero Road<br>Palo Alto, CA 94303 |
| 5 | | Telephone:    (650) 739-3939<br>Facsimile:    (650) 739-3900 |
| 6 | | bgselden@jonesday.com |
| 7 | | John D. Goetz*<br>Tarah E. Ackerman* |
| 8 | | JONES DAY<br>500 Grant Street, Suite 4500 |
| 9 | | Pittsburgh, PA 15219<br>Telephone:    (412)391-3939 |
| 10 | | Facsimile:    (412) 394-7959<br>jdgoetz@jonesday.com |
| 11 | | tackerman@jonesday.com |
| 12 | | *Applying for admission pro hac vice* |
| 13 | | *Attorneys for Plaintiff Hainan Airlines Co., Ltd.* |